# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EQUONTUS T. YOUNG,

                Petitioner,

         v.                            Case No. 14-CV-434

MIKE DITTMANN,

                Respondent.

# DECISION AND ORDER

## I.  Procedural History

Petitioner Equontus T. Young is incarcerated at Columbia Correctional Institution, having been convicted on January 6, 2010 in Milwaukee County Circuit Court of first-degree reckless homicide while armed. (ECF No. 1 at 2; *see also* ECF No. 16-1 at 1-2.) On April 15, 2014, Young filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1) that was randomly assigned to this court. The court screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (ECF No. 9.) Respondent did so on July 28, 2014  (ECF No. 16) and submitted a brief in opposition to the petition (ECF No. 17). On August 29, 2014, Young replied. (ECF No. 21.)  The petition is now

ready for resolution. Respondent concedes that venue in this district is proper (ECF No. 16, ¶ 2), the petition is timely (ECF No. 16, ¶ 5), and it is not a second or successive petition (ECF No. 16, ¶ 4). All parties have consented to the full jurisdiction of a magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (ECF Nos. 7, 14.)

## II.     Procedural Default

In his petition, Young raises three issues. First, he alleges that he was denied the effective assistance of trial counsel because his attorney did not move to excuse a prospective juror who expressed uncertainty as to how the fact that the juror's cousin was the victim of an unsolved homicide a year earlier might affect his ability to decide the case impartially. (ECF No. 1 at 6.) Second, Young again alleges he was denied the effective assistance of trial counsel by virtue of the fact that his attorney failed to call to testify four witnesses Young characterizes as being favorable to his defense. (ECF No. 1 at 7.) Finally, it is Young's position that his Sixth Amendment right to confrontation was violated when a medical examiner other than the medical examiner who actually performed the autopsy of the victim testified at trial. (ECF No. 1 at 9.)

All three issues were presented to the Wisconsin Court of Appeals as part of Young's direct appeal of his conviction. (ECF No. 16-2.) However, after the court of appeals affirmed Young's conviction, in seeking review by the Wisconsin Supreme Court Young's appellate counsel raised only the claim that trial counsel was ineffective

for failing to call the four witnesses. (ECF No. 16-6.) The Wisconsin Supreme Court denied review. (ECF No. 16-8.) It is respondent's position that the only claim properly before the court is Young's claim regarding his trial counsel's failure to call the four witnesses; Young procedurally defaulted his other claims when he did not include them in his petition for review by the Wisconsin Supreme Court. (ECF No. 17 at 5-6.)

A federal court cannot grant a state inmate's petition for a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999); *see also Boerckel*, 526 U.S. at 848 ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").

Young may avoid the consequences of the procedural default if he is able to show both that there was cause for his failure to include the additional claims in his petition for review and that he was prejudiced as a result. *See Wainwright v. Sykes*, 433 U.S. 72, 91 (1977); *Rodriguez,* 193 F.3d at 917. An attorney's error that rises to the level of ineffective assistance of counsel will constitute cause to excuse procedural default. *Coleman v. Thompson,* 501 U.S. 722, 754 (1991). Young contends that he was denied the effective assistance of counsel when his appellate counsel failed to include the claims

3

related to his right to confrontation and the allegedly biased juror in his petition for review. Therefore, Young argues, cause exists to excuse his procedural default.

However, there is no federal constitutional right to the effective assistance of counsel in a discretionary appeal such as Young's petition for review to the Wisconsin Supreme Court; the constitutional right to counsel is guaranteed to a defendant only for trial and for the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600, 610-12 (1974); *see also Buelow v. Dickey*, 847 F.2d 420, 426 (7th Cir. 1988) (holding that counsel's failure to file a timely petition for review with the Wisconsin Supreme Court was not cause to excuse petitioner's procedural default because there is no right to competent counsel on a petition for review by the state supreme court). Thus an attorney's negligence in a postconviction proceeding does not establish cause. *Coleman,* 501 U.S. at 756-57.

Although the Wisconsin Supreme Court held that a criminal defendant's right to counsel includes the filing of a petition for review, *State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 253, 548 N.W.2d 45, 48 (1996), the court recognized this right as a matter of *statutory* as opposed to *constitutional* law. In doing so, the court explicitly noted the absence of a federal constitutional mandate of effective assistance of counsel on a petition for review. *State v. Mosley*, 102 Wis. 2d 636, 662-68, 307 N.W.2d 200, 215-17 (1981) (discussing *Moffitt*, 417 U.S. 600). In the absence of a federal constitutional right to the effective assistance of counsel, "well-settled principles of agency law" apply and a client-principal bears the risk of the conduct of his attorney-agent. *Maples v. Thomas*,

4

132 S. Ct. 912, 922 (2012). Thus, any error by counsel regarding the filing of a petition for review is generally not cause to overlook the petitioner's procedural default.

The United States Supreme Court recently recognized certain circumstances in which errors of attorneys that do not constitute a denial of the constitutional guarantee of effective assistance of counsel nonetheless establish cause to excuse default of a state procedural rule. *See Trevino v. Thaler*, 133 S. Ct. 1911 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Maples*, 132 S. Ct. 912. In *Martinez*, the Court held that if, as a matter of state law, petitioner's claim could not have been raised prior to a proceeding for which there was not traditionally a constitutional right to counsel, counsel's errors during such a proceeding might constitute cause to overcome procedural default of a claim of ineffective assistance of trial counsel. 132 S. Ct. at 1315. In *Trevino*, the Court expanded the holding in *Martinez* to conclude that, even when the state bar to raising a claim in a proceeding for which there is not a constitutional right to counsel is merely practical rather than explicit (as it was in *Martinez*), the *Martinez* exception to the *Coleman* rule may apply. *Trevino*, 133 S. Ct. at 1921. Finally, *Maples* offered a further exception, holding that, under the extreme circumstances of that case, post-conviction counsel's abandonment of the petitioner constitutes cause to excuse the petitioner's procedural default. 132 S. Ct. at 927.

None of these recent Supreme Court decisions are applicable here. Young was not abandoned by his post-conviction counsel under circumstances whereby the

5

traditional agency relationship that exists between attorney and client ceased to function, as was the case in *Maples*. Nor was there an actual or de facto state procedural rule preventing Young from raising his claims at some other time in the proceedings during which he *did* have a constitutional right to counsel. To the contrary, Young *did* raise his procedurally defaulted claims on direct appeal. Thus, in light of the fact that there is no constitutional right to the effective assistance of counsel on a petition for review by a state supreme court, Young cannot claim a constitutional deprivation of effective representation.

Young could also establish cause by showing that "some external impediment" prevented his appellate counsel from constructing or raising the claims regarding his right to confrontation and the allegedly biased juror in his petition for review. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Although the Supreme Court in *Murray* did not define "external impediment," it offered two examples: a showing that the factual or legal basis for a claim was not reasonably available to counsel, or "some interference by officials." *Id*. at 488 (quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)). Young does not claim that any external impediment prevented his appellate counsel from raising the other two claims, nor is any apparent in the record. ,

A petitioner may also avoid the consequences of a procedural default if he can demonstrate that he is actually innocent of the offense for which he is currently incarcerated. *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (citing *House v. Bell*, 547

U.S. 518, 536-37 (2006)). Actual innocence claims require the petitioner to persuade the court that, in light of new evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013)). The actual innocence standard is a demanding one that "permits review only in the 'extraordinary' case." *Id.* (quoting *House*, 547 U.S. at 538). In light of the substantial evidence of Young's guilt, discussed below, the court finds that Young is unable to avoid the consequences of his procedural default on the basis of actual innocence.

Ordinarily, if any claim in a petition has not been exhausted, the "mixed petition" rule bars the court from granting relief on any claim contained in that petition, even a claim for which the petitioner has exhausted his state court remedies. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, if there is no longer any means by which the petitioner may exhaust his state court remedies, the claim may be deemed exhausted for the purposes of 28 U.S.C. § 2254(b) and the total exhaustion rule, but unexhausted for the purposes of procedural default. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman*, 501 U.S. at 732. The result is that the court is barred from considering the merits of the procedurally defaulted claims but, instead of dismissing the petition in its entirety, may consider any exhausted claim upon its merits. Respondent does not argue that the total exhaustion rule bars the court from considering Young's exhausted claim. Thus, the court turns to the only claim that is properly before the court: whether Young

was denied the effective assistance of counsel when his trial counsel failed to call four particular witnesses.

### III. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)). It is not enough for the federal court to conclude that the state court's decision was incorrect. *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002)). Rather, the decision of the state court must have been unreasonable. *Id.* In the context of a decision that is allegedly contrary to clearly established federal law, the petitioner must show that "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

When petitioner's claim is for ineffective assistance of counsel, petitioner must point to specific acts or omissions by his attorney that were, under all the circumstances, "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The court applies a strong presumption that the attorney's representation was within the "wide range" of reasonable professional assistance." *Harrington*, 131 S. Ct. at 787; *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). If petitioner can demonstrate that his attorney's actions fell below an objective standard of reasonableness, he must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Thus, in order to prevail in a federal habeas corpus petition on a claim of ineffective assistance of counsel, petitioner must clear a double hurdle of unreasonableness. *See Jones v. Brown*, 756 F.3d 1000, 1006 (7th Cir. 2014). Not only must the conduct of petitioner's attorney have fallen so far outside the wide range of acceptable professional conduct as to be unreasonable under *Strickland*, but then the state court's rejection of that argument must have been so misguided that no reasonable jurist could conclude that the state court's decision was consistent with the *Strickland* standard. *See Harrington*, 131 S. Ct. at 788. With these standards in mind, the court turns

to Young's claim that his trial counsel was ineffective for failing to call four particular witnesses.

IV. **Analysis**

A. **Facts**

On June 13, 2006, Antoine Taylor and three of his friends drove up to his friend's home and observed a crowd of 40–50 people in the street surrounding two women who were in a physical fight. Taylor entered the fray and attempted to separate the combatants. Taylor's friend, having observed Young and Young's friend, Robert Banks, in the area with firearms, went into his home where he retrieved his .45 caliber pistol. When Taylor's friend returned outside, shots rang out. One shot was fired into the air by Taylor's friend. Witnesses testified that two more shots were fired by Young, one of which struck Taylor, killing him.

At Young's trial, three-and-a-half years later, multiple witnesses testified either that they observed Young fire a 9 millimeter pistol at Taylor or that they heard him later admit that he did so. The jury found Young guilty and he was sentenced to 40 years in state prison to be followed by 10 years of extended supervision. (ECF No. 16-1.) According to Young, there were four witnesses, Megan Lee, Edward Patterson, Caressa Adams, and Kewaun Clark, whom his attorney should have called because they would have testified that they observed Banks as the one who shot and killed Taylor.

Young's assertion as to what these four witnesses would have testified to had they been called as witnesses appears to be based solely upon statements recounted in police reports written shortly after the shooting. Young has not offered affidavits from any of the witnesses stating what they would have said had they been called to testify at trial. The police reports indicate that the stories of at least some of the four uncalled witnesses changed over time and did not consistently exculpate Young.

For example, a Milwaukee Police Department Incident Report dated the day after the shooting states that Lee "positively identified Robert L. Banks as being the shooter in this offense." (ECF No. 16-6 at 44.) When shown a photograph of Young a few days later, Lee stated that she recognized him but denied seeing him at the time of the homicide. (ECF No. 16-6 at 46.) But when re-interviewed a year later, Lee stated that she observed "Quon" (apparently Young's nickname), armed with a semiautomatic weapon, shoot Taylor. (ECF No. 16-6 at 48.) Just as she was "positive" the year before about her identification of Banks as the shooter, this time she stated she was "100% positive to her identification of the suspect, Quon." (ECF No. 16-6 at 48.)

A separate Incident Report dated the day after the shooting states that Patterson told a detective that after Taylor was shot he heard people in the crowd say, "Pookie did it, Pookie did it!" (ECF No. 16-6 at 51.) Pookie is Banks' nickname. (ECF No. 16-6 at 51.) Yet another Incident Report from the same day states that Patterson reported observing Banks with a 9 millimeter pistol about an hour before the shooting and that he appeared

drunk. (ECF No. 16-6 at 52.) Patterson stated he did not see who shot Taylor. (ECF No. 16-6 at 53.) Another Incident Report a few days later says that Patterson reported seeing Young at the scene of the shooting and that immediately after the shots were fired he saw Young running from the scene with a gun in his hand. (ECF No. 16-6 at 46 .) However, he did not state that he saw Young actually fire the gun. (Id.)

An Incident Report from the day of the shooting states that Adams reported seeing a black male (whom she had seen earlier drinking "a gallon of gin" and who appeared to be drunk) fire once into the crowd. (ECF No. 16-6 at 54.) She then heard two more shots. (ECF No. 16-6 at 54.) When someone asked who did the shooting, Adams pointed to the black male she had seen shoot the gun and someone said, "that's Pookie." (ECF No. 16-6 at 55.) An Incident Report from a few days later states that Adams identified a photograph of Young but denied seeing him at the scene of the shooting. (ECF No. 16-6 at 57.) However, in that same interview Adams stated that her cousin told her she was involved in a three-way telephone call with Quon during which he admitted shooting Taylor. (ECF No. 16-6 at 57.)

An Incident Report from the day after the shooting reflects that Clark told a detective that he saw "Pookie" shoot Taylor. (ECF No. 16-6 at 60.) Clark stated that he knew who Pookie is and he gave the police a detailed description of Pookie, including what he was wearing. (ECF No. 16-6 at 60.) An Incident Report two days later reports that Clark said he "does not believe that [Pookie] is the individual who shot the named

victim (Taylor)." (ECF No. 16-6 at 62.) When re-interviewed a year later, Clark reported again that he saw "Pookie" shoot Taylor. (ECF No. 16-6 at 63-64.) Clark further stated "that he believes that he had stated from day #1 that the person he witnessed doing the shooting was "Pookie" (Banks)." (ECF No. 16-6 at 63-64.) Clark added that he had seen both "Pookie" and "Quon" with firearms shortly before the shooting. (ECF No. 16-6 at 63-64.)

### B. Adequate and Independent State Law Grounds

The independent and adequate state ground doctrine provides that a federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729. To bar federal court review the state court must have "clearly and expressly" stated that its judgment rests upon the state law ground. *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the decision of the last state court to have reviewed the petitioner's claim "fairly appears to rest primarily on federal law, or to be interwoven with the federal law," *Coleman*, 501 U.S. at 735 (quoting *Mich. v. Long*, 463 U.S. 1032, 1040-41 (1983)), the independent and adequate state ground doctrine shall not bar the federal court from considering the merits of the petitioner's claim. *Id.*

In Wisconsin, "[w]hen a defendant claims that trial counsel was deficient for failing to present testimony, the defendant must allege with specificity what the

13

particular witness would have said if called to testify." *Arredondo*, 2004 WI App 7, ¶40, 269 Wis. 2d 369, 674 N.W.2d 647) (citing *State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349-350 (Ct. App. 1994)). The Wisconsin Court of Appeals noted that Young did not present any evidence as to what the four individuals would have testified to if called as witnesses at trial and instead simply pointed to statements recorded in police reports. *State v. Young*, 2013 WI App 1, ¶ 18 (unpublished). Without specific evidence, e.g. affidavits from the four individuals, the court of appeals had no way of knowing which version of events the witnesses might have told the jury. *Id.*, ¶ 21. It concluded that when the circuit court noted the absence of such affidavits it "effectively" found that Young's motion failed to comply with the state procedural requirement set forth in *Arredondo*. *Id.*, ¶ 18. But the circuit court and the court of appeals then proceeded to consider the claim on the merits, each concluding that there was no reasonable probability of a different result had these individuals been called as witnesses and testified consistent with the statements recorded in the police reports. *Id.*, ¶ 19; (ECF No. 16-6 at 3-5).

The court finds that it is unclear whether the court of appeals rejected Young's claim because he failed to comply with the state procedural requirement that he allege with specificity what each of the witnesses would have said if called to testify or because the claim failed on its merits. Because the court of appeals did not explicitly state that it was relying upon the state procedural rule as its reason for denying Young's

14

appeal, this court concludes that the independent and adequate state ground doctrine does not apply and now turns to the merits of Young's claim.

**C. Merits**

A preliminary question is whether the four witnesses were even available to testify at trial. The record indicates that the fact that the case was not charged until three years after the shooting took place created problems for Young's attorney in locating witnesses. When the trial was first scheduled to begin, Young's attorney requested and was granted an adjournment so that he could look for witnesses, although which witnesses he was looking for was not specified. *Young*, 2013 WI App 1, ¶ 21 fn. 1. At the beginning of the rescheduled trial, the following colloquy took place between the court and Young's attorney:

> MR. POULSON: [T]his was a case that happened in 2006, and it wasn't charged until 2009. And people have moved, and they're just all over the place. They're difficult to find. Police officers, including detectives, have retired. So it's a little difficult.
> I'm as prepared, I guess, as I'm going to be. I certainly could use some more time to find them out. My investigator is getting close on some of the people that we need. So I guess before we—I'm ready to try the case, if that's what the Court's pleasure is. But I would, obviously, be needing some more time to locate people who are important, because we need them and can't find them.
> THE COURT: All right. But these are people that you don't necessarily think you're going to find?
> MR. POULSON: We have some leads on a couple of them.
> THE COURT: All right. Because I adjourned this case back last month for you to try to find them. I know it wasn't a ton of time. But given the age of the case, I don't know—you don't know that any more time is necessarily going to lead to any more witnesses that are necessary, right, Mr. Poulson?

15

> MR. POULSON: Well, I think there's a real possibility of finding some that are important to the defense. Whether or not I can—one of them was on a warrant status. I don't know whether he's been found or hasn't been found as of yet. We do have a couple of leads as to where that individual is. Whether we can get him here or not is another question.

(ECF No. 16-9 at 4-5.) At no point during the discussion did Young's attorney identify who the witnesses were that he was trying to locate, although he did say that some of them were witnesses to the shooting. (ECF No. 16-9 at 6.) Because the court was not convinced that another adjournment would result in Young's attorney actually locating any additional witnesses, it decided to go forward with the trial. (ECF No. 16-9 at 8.)

Assuming for present purposes that it was defense counsel's decision rather than the witnesses' unavailability that led to these witnesses not testifying, it would be difficult for this court to criticize defense counsel for not calling these witnesses at trial based upon conflicting stories that they gave as set forth in the police reports. Rather than exculpating Young, Lee's and Adams' most-recent statements to the police implicated rather than exculpated Young. Calling either of them as witnesses very well could have added further evidence of Young's guilt. The court cannot conclude that a decision not to call them to testify was unreasonable or prejudicial.

For his part Patterson admitted that he did not see who shot Taylor. Although he heard someone say that "Pookie did it," he also told the police that he saw Young running from the scene immediately after the shots were fired with a gun in his hand.

Given those statements, any decision not to call him as a witness cannot be characterized as unreasonable or prejudicial.

Clark, who was 14 years old at the time of the murder, on the day of the shooting unqualifiedly identified Banks as the shooter. But a police report two days later records Clark as having said that he does not believe that Banks is the person who shot Taylor. A year later Clark again directly identified Banks as the shooter, denying that he had ever changed his story. But even if Clark testified at trial that he observed Banks shoot Taylor, there is no reasonable prospect that his testimony would have resulted in Young's acquittal. Not only was Clark vulnerable to impeachment with the police report suggesting that his story had changed, but, as the trial court noted in its order denying Young's motion for new trial, the evidence against Young was "quite overwhelming." (ECF No. 16-6 at 42.)

Having reviewed the trial transcript, the court concurs in this characterization. The evidence against Young included, most notably, eyewitnesses who testified that Young was the shooter (*see, e.g.*, ECF Nos. 16-11 at 43 (testimony of Wayne Lee); 16-12 at 104-05 (testimony of Anthony Williams); 16-13 at 116-19 (testimony of Detective Mark Peterson recounting prior statement of witness Jamie Patterson)) and witnesses who reported that Young admitted responsibility for the murder (*see, e.g.*, ECF Nos. 16-11 at 107-08 (testimony of Stacy Walls); 16-13 at 33-34 (testimony of Ryant Rodgers); 16-13 at

58-62 (testimony of Detective Shannon Jones recounting prior statements of Stacy Walls and Jamie Patterson)).

The court cannot say that the court of appeals' decision denying Young's claim of ineffective assistance of counsel was clearly "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). Accordingly, the court must deny Young's petition for a writ of habeas corpus.

Finally, in accordance with 28 U.S.C. § 2253(c)(2) and Rule 11 of the Rules Governing Section 2254 Cases, the court finds that Young has failed to make a substantial showing of a denial of a constitutional right and therefore the court denies him a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of December, 2014.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge